**GEORGIACARRY.ORG, INC.,
et al., Plaintiffs,**

v.

**CITY OF ATLANTA, et
al., Defendants.**

**Civil Action No. 1:08–CV–2171–MHS.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 26, 2008.

John R. Monroe, Roswell, GA, for Plaintiffs.

Christopher Allen Riley, Erica L. Fenby, Michael P. Kenny, Alston & Bird LLP, Joshua David Jewkes, Yonette Sam–Buchanan, Ashe Rafuse & Hill, Atlanta, GA, for Defendants.

### ORDER

MARVIN H. SHOOB, Senior District Judge.

*Introduction*

Plaintiffs GeorgiaCarry.org, Inc., an organization dedicated to promoting the rights of its members to keep and bear arms, and Timothy Bearden, a member of the Georgia House of Representatives, seek declaratory and injunctive relief against defendants the City of Atlanta, Atlanta Mayor Shirley Franklin, and Benjamin DeCosta, General Manager of Hartsfield–Jackson Atlanta International Airport (the "Airport"). Plaintiffs contend that House Bill ("H.B.") 89, which was passed by the Georgia General Assembly on April 4, 2008, permits any person who possesses a valid Georgia firearms license ("GFL") to carry a firearm in the nonsterile areas of the Airport, and thus overrides the City's longstanding policy prohibiting visitors to the Airport from carrying firearms. Defendants contend that the new law, by its terms, does not apply to the Airport, and that even if it did, it would be preempted by the pervasive scheme of federal law and regulations governing airport safety and security.

The Court previously denied plaintiffs' motion for a preliminary injunction. The case is now before the Court on defendants' motion for judgment on the pleadings. For the following reasons, the Court grants the motion and dismisses this action.

*Discussion*

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "Judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera,* 292 F.3d 695, 700 (11th Cir.2002) (citation omitted). "If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint." *Id.* (citation omitted).

In this case, all of plaintiffs' claims turn upon their contention that H.B. 89 applies to airports.[1] This is an issue of statutory construction as to which there are no material facts in dispute. As discussed below, the plain terms of the law do not support plaintiffs' interpretation, and all of plaintiff's arguments in favor of reading H.B. 89 as applying to airports are without merit. Accordingly, the Court concludes that H.B. 89 does not apply to airports, and that defendants are therefore entitled to judgment on the pleadings on all of plaintiffs' claims.[2]

Prior to the passage of H.B. 89, Georgia law had for many years made it a misdemeanor to carry a firearm "while at a public gathering." O.C.G.A. § 16–11–127(a)(the "Public Gathering Law"). In 1976, the definition of "public gathering" was amended to include "publicly owned or operated buildings." 1976 Ga. Laws 1432, *codified at* O.C.G.A. § 16–11–127(b). Since the Airport is owned and operated by the City of Atlanta, it falls within this definition.

In 2002, the Georgia General Assembly passed the Transportation Passenger Safety Act ("TPSA"). O.C.G.A. §§ 16–12–122 through 16–12–128. Among other things, the TPSA makes it a felony to carry a firearm "with the intention of . . . introducing [it] into a terminal." O.C.G.A. § 16–12–127(a)(1). "Terminal" is defined as "an aircraft, bus, or rail vehicle station, depot, any such transportation facility, or infrastructure relating thereto operated by a transportation company or governmental entity or authority." O.C.G.A. § 16–12–122(10).[3]

Effective July 1, 2008, H.B. 89 added a new subsection to the Public Gathering Law, which provides:

A person licensed or permitted to carry a firearm by this part shall be permitted to carry such firearm, subject to the limitations of this part, in all parks, historic sites, and recreational areas, including all publicly owned buildings located in such parks, historic sites, and recreational areas and in wildlife management areas, notwithstanding Code Section 12–3–10 and in wildlife management areas notwithstanding Code Section 27–3–1.1 and 27–3–6, and in public transportation notwithstanding Code Sections 16–12–122 through 16–12–127; provided, however, that a person shall not carry a firearm into a place prohibited by federal law.

O.C.G.A. § 16–11–127(e). According to plaintiffs, the "public transportation" por-

---

1. Plaintiffs contend that by enforcing a ban on guns in the Airport, defendants are violating (1) O.C.G.A. § 16–11–173, which prohibits local governments from regulating the carrying of firearms; (2) the Militia Clause of the U.S. Constitution; (3) the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; (4) the Fourth Amendment to the U.S. Constitution; and (5) the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. (Am. Compl. ¶¶ 30–35.) All of these claims depend upon plaintiffs' contention that H.B. 89, by authorizing GFL holders to carry firearms in the Airport, effectively repealed existing state law prohibiting such conduct.

2. This conclusion makes it unnecessary for the Court to address defendants' preemption argument and moots defendants' counterclaim, which seeks relief only to the extent that H.B. 89 applies to the Airport.

3. Plaintiffs contend that the TPSA repealed the Public Gathering Law by implication insofar as it applies to airports. The Court finds it unnecessary to address this contention. However, the Court notes that repeals of statutes by implication are not favored, *see, e.g.,* *Watt v. Alaska,* 451 U.S. 259, 266–67, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981); and that the TPSA itself provides that it "shall be cumulative and supplemental to any other law of this state." O.C.G.A. § 16–12–128(a).

tion of the law was intended "to exempt Georgia firearms licensees from provisions of Georgia law making it a crime to carry a firearm in public transportation, *including the Airport.*" (Bearden Decl. ¶ 7.)(Emphasis added.)

Regarding the construction of statutes generally, Georgia law provides that "the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." O.C.G.A. § 1–3–1(a). "In all interpretations of statutes," however, "the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter." O.C.G.A. § 1–3–1(b).

Accordingly, in interpreting H.B. 89, the Court will "look first to the plain meaning of the statute." *Moore v. Am. Fed'n of Television & Radio Artists,* 216 F.3d 1236, 1245 (11th Cir.2000) (citation omitted). The Court "will look to evidence of [legislative] ... intent outside the four corners of the statute if '(1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent.'" *Id.* (quoting *United States v. DBB, Inc.,* 180 F.3d 1277, 1281 (11th Cir.1999))(footnote omitted).

H.B. 89 authorizes GFL holders to carry firearms "in public transportation." O.C.G.A. § 16–11–127(e). It does not mention airports, nor does it define "public transportation." The ordinary signification of "public transportation" does not include airports. First, airports do not provide *public* transportation. Air carriers, unlike public transportation systems such as MARTA, are not owned or operated by any governmental entity. Second, airports provide *transportation* only to air-

line passengers, a category of persons to whom plaintiffs admit that H.B. 89 does not apply, because federal law prohibits airline passengers from carrying firearms. It would be incongruous, to say the least, if a law purporting to cover persons "in public transportation" applied only to persons who were not being "transported." Therefore, giving the terms of the statute their ordinary signification, the Court concludes that the "public transportation" provision of H.B. 89, as codified at O.C.G.A. § 16–11–127(e), does not apply to airports.

Plaintiffs have not pointed to any ambiguity in the statutory language which would require the Court to look beyond the four corners of the statute for clarification. Instead, plaintiffs simply refer to the TPSA's definitions of "transportation company" and "terminal" to support their claim that the General Assembly meant "public transportation" to include airports. The Court, however, cannot use definitions from a entirely different statute to construe a term in H.B. 89 in a manner that is contrary to the term's common and ordinary meaning. Plaintiffs also note that the TPSA is codified in Article 4 of Chapter 12 of Title 16 of the Georgia Code, which is entitled "Offenses Against Public Transportation." H.B. 89, however, amends O.C.G.A. § 16–11–127, which is within Article 4 of *Chapter 11* of Title 16 of the Georgia Code. In any event, the title of an article within the Georgia Code cannot alter the plain language of the statute.

Plaintiffs have also failed to show that applying H.B. 89 according to its plain meaning would lead to an absurd result. Plaintiffs contend that if H.B. 89 does not apply to airports, then the exception for carrying firearms into a place prohibited by federal law is superfluous. According to plaintiffs, "[t]he only reason for including this exception is to make clear that carrying firearms by GFL [holders] is not

prohibited in the Airport, but it is prohibited in the Airport if prohibited by federal law (*i.e.*, in the sterile areas of the Airport)." (Pls.' Resp. in Opp'n to Defs.' Mot. for J. on the Pleadings at 21.) This argument is without merit. The federal law exception applies to *all* of the places listed in H.B. 89, including parks, historic sites, and recreational and wildlife management areas, as well as public transportation.[4] Federal law prohibits carrying firearms in national parks and recreation areas. 36 C.F.R. § 2.4 (2008). Thus, the federal law exception in H.B. 89 is not superfluous but applies to federally-owned parks and recreation areas in Georgia, such as the Chattahoochee River National Recreation Area, where the new law would otherwise permit GFL holders to carry firearms.

Plaintiffs also argue that the "notwithstanding" language of H.B. 89, which authorizes GFL holders to carry firearms in public transportation "notwithstanding Code Sections 16–12–122 through 16–12–127," would be superfluous unless it was intended to make clear that a GFL holder could carry a firearm in an airport. According to plaintiffs, "[t]he General Assembly would have had no need to make clear in H.B. 89 that a GFL holder could carry a firearm in public transportation 'notwithstanding O.C.G.A. § 16–12–127' if the General Assembly were not intending to include the Airport in the decriminalization." (Pls.' Resp. in Opp'n to Defs.' Mot. for J. on the Pleadings at 21–22.) This argument is also without merit. Plaintiffs misleadingly focus only on O.C.G.A. § 16–12–127, but the "notwithstanding" language in

H.B. 89 refers to *all* of the TPSA. In another section, the TPSA prohibits boarding any bus or rail vehicle with a firearm. O.C.G.A. § 16–12–123(b). Since "public transportation" includes bus and rail vehicles such as those operated by MARTA, the "notwithstanding" language was needed to make clear that GFL holders could carry firearms onto such vehicles notwithstanding the TPSA.

Finally, there is no clear evidence that, despite the plain and ordinary meaning of "public transportation," the General Assembly intended that phrase to include airports. Plaintiffs have presented only two pieces of evidence in this regard.[5] The first is a video clip of the following exchange that took place on the floor of the Georgia Senate, shortly before the bill passed, between Sen. Vincent Fort and Sen. Chip Rogers, who introduced the bill in the Senate:

SENATOR FORT: You feel comfortable in this post–9/11 era people packing heat on a MARTA train, ride it into the airport, going into the atrium and potentially going into the—into the security line with a weapon, with a firearm?

SENATOR ROGERS: Well, when you say people, Senator, I think we need to differentiate between what I believe you're alluding to would be the general public, who's not covered in this bill, as opposed to people that are specified in this bill which are firearms license holders, again, representing three percent of our state population and people that have gone through extensive back-

---

4. The statute lists the various places, separated by commas, where GFL holders may carry firearms notwithstanding certain designated Code sections, and then, following a semicolon, concludes with the proviso that "a person shall not carry a firearm into a place prohibited by federal law." O.C.G.A. § 16–11–127(e). This grammatical structure clearly indicates

that the proviso applies to all the places in the preceding list, not just the last one.

5. Plaintiffs did not cite this evidence in response to defendants' motion for judgment on the pleadings but submitted it in support of their motion for a preliminary injunction.

ground checks and people who historically do not violate the law.

Now if—someone who is intent on committing a crime with a firearm does not care what this says or any other law that we have. This is only to allow people who have already proven themselves to be law-abiding citizens to exercise a right guaranteed to them under the Constitution to protect themselves.

(Prelim. Inj. Tr. at 21.)

This brief exchange is entirely insufficient to demonstrate that the General Assembly intended "public transportation" to include airports. Sen. Fort's question poses a hypothetical that begins with a person carrying a firearm onto a MARTA train—a scenario clearly permitted under H.B. 89. Sen. Fort then asks whether Sen. Rogers would be "comfortable" if that person rode the MARTA train into the Airport, got off, and went into the atrium or even the security line. This question does not necessarily imply that H.B. 89 would permit a person to *legally* carry a firearm into the Airport. In fact, one way to understand Sen. Fort's question is that, since H.B. 89 clearly authorizes carrying a firearm onto a MARTA train, and since MARTA goes to the Airport, the bill would increase the risk that someone might *illegally* carry a firearm into the Airport. Sen. Rogers's answer does not clarify this ambiguity. He does not even address whether H.B. 89 would permit persons to legally carry firearms in the Airport. Instead, Sen. Rogers focuses exclusively on the fact that H.B. 89 applies only to GFL holders, thus leaving completely unanswered the question arguably implicit in Sen. Fort's hypothetical, *i.e.,* whether H.B. 89 would permit anyone, including GFL holders, to legally carry a firearm into the Airport. Only one thing is clear from this ambiguous exchange: it tells us nothing about what was in the minds of the legislators who later voted for H.B. 89, and thus it provides no basis for a construction of the statute that is contrary to its plain and ordinary meaning.

■ The second piece of evidence presented by plaintiffs is the declaration of plaintiff Bearden, the author and principal sponsor of H.B. 89. In his declaration, which was executed after the law took effect, plaintiff Bearden asserts, without explanation, that it was the intent of the "public transportation" portion of H.B. 89 "to exempt Georgia firearms licensees from provisions of Georgia law making it a crime to carry a firearm in public transportation, including the Airport." (Bearden Decl. ¶ 7.) This evidence is not entitled to any weight. It is a well-settled rule of statutory construction that "affidavits by drafters after enactment of legislation will not be considered by the courts." *Friedman v. United States,* 364 F.Supp. 484, 488 (S.D.Ga.1973); *see also Goolsby v. Blumenthal,* 581 F.2d 455, 460 (5th Cir.1978)(quoting *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 132, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974))("[P]ostpassage remarks of legislators, however explicit, cannot serve to change the legislative intent of Congress expressed before the Act's passage.... Such statements represent only the personal views of these legislators, since the statements were made after passage of the Act.")(internal quotation marks omitted).

In short, since the ordinary signification of "public transportation" does not include airports, and since there is no ambiguity in the statute, and it can be applied according to its ordinary meaning without rendering any portion of the statute superfluous or otherwise producing an absurd result, and since there is no clear evidence that the Georgia General Assembly intended the law to apply to airports, the "public transportation" provision of H.B. 89, as codified

at O.C.G.A. § 16–11–127(e), must be construed not to apply to airports. Therefore, all of plaintiffs' claims must fail, and defendants are entitled to entry of judgment on the pleadings in their favor.

*Summary*

For the foregoing reasons, the Court GRANTS defendants' motion for judgment on the pleadings [# 24], DISMISSES plaintiffs' complaint, and DISMISSES AS MOOT defendants' counterclaim. The Clerk is DIRECTED to enter final judgment accordingly.